# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS M. URIOSTE, | Case No. EDCV 13-0440-VBF (JEM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| IAN BURNS, et al., | |
| Defendants. | |

On March 18, 2013, Thomas M. Urioste ("Plaintiff"), proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

**SCREENING STANDARDS**

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in

1  the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.
2  1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual
3  allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "'[A] liberal interpretation of
4  a civil rights complaint may not supply essential elements of the claim that were not initially
5  pled.'"  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting
6  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
7       Although a complaint "does not need detailed factual allegations" to survive
8  dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic
9  recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly,
10 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in
11 Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations
12 sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely
13 possible or conceivable.  Id. at 557, 570.
14      Simply put, the complaint must contain "enough facts to state a claim to relief that is
15 plausible on its face." Id. at 570.  A claim has facial plausibility when the complaint presents
16 enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v.
17 Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability requirement, but "it asks
18 for more than a sheer possibility that a defendant has acted unlawfully."  Id.  A complaint
19 that pleads facts that are merely consistent with liability stops short of the line between
20 possibility and plausibility.  Id.
21      In a pro se civil rights case, the complaint must be construed liberally to afford
22 plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,
23 623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,
24 pro se litigants are generally entitled to a notice of a complaint's deficiencies and an
25 opportunity to amend prior to the dismissal of an action.  Lucas v. Dept. of Corrections, 66
26 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Karim-Panahi, 839 F.2d at 623.  Only if
27 it is absolutely clear that the deficiencies cannot be cured by amendment should the
28 complaint be dismissed without leave to amend.  Id. at 623; see also Cato v. United States,

70 F.3d 1103, 1106 (9th Cir. 1995); McQuillon v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004) (where amendment would be futile, complaint may be dismissed without leave to amend).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following in his Complaint:

On April 3, 2012, Plaintiff was in federal custody as a pretrial detainee at the San Bernardino County Jail, Central Detention Center ("CDC"). At the time, Plaintiff was a defendant in the case of United States v. Rios, et al., United States District Court, Central District of California, case number CR 11-492-GAF. (Complaint, "Attachment Re: Part D: Claims," ¶ 1.)

Plaintiff was housed in CDC's G-North tier. The CDC's G-North and G-South tiers house only high security inmates and administrative segregation inmates in special conditions designed for the protection of the inmates and others. Specifically, inmates on the G-North and G-South tiers are housed in individual cells. At any given time, only one inmate is allowed out of his cell onto each tier. (Complaint, "Attachment Re: Part D: Claims," ¶ 2.)

Inmates at CDC wear color-coded jumpsuits reflecting each inmate's security status. Plaintiff was one of only a handful of inmates who wore a red jumpsuit, reflecting the highest security classification. Pursuant to this classification, for Plaintiff's protection and the protection of others, Plaintiff was confined in an individual cell for at least 23 hours every day, and was allowed out of his cell only when other inmates were not present. Plaintiff's high security classification was apparent immediately given his housing location and the color of his jumpsuit. Every employee at CDC knew of Plaintiff's classification, or would have become aware of it immediately upon seeing him in his red jumpsuit. (Complaint, "Attachment Re: Part D: Claims," ¶ 2.)

Shortly after Plaintiff's arraignment in the Rios case, he began cooperating with the government. Plaintiff entered a guilty plea on March 7, 2012. On March 30, 2012, the government circulated a stipulation to the remaining defendants in the case, in which Plaintiff was no longer listed as a party. Because Plaintiff's cooperation with the government could potentially be inferred from this, the prosecutor agreed to notify the United States Marshal's Service that Plaintiff should be placed in protective custody. (Complaint, "Attachment Re: Part D: Claims," ¶ 4.)

On the morning of April 3, 2012, between 8:00 a.m. and 9:00 a.m., Plaintiff was the sole inmate out of his cell on the G-North tier. During this time, inmate Louis Martinez ("Martinez"), another defendant in the Rios case who was housed on the G-South tier, was out of his cell in the day room separating the G-North and G-South tiers. Plaintiff and Martinez knew each other, and engaged in a conversation from either side of a barred door separating the G-North tier and the day room. The barred door was operated from a control booth with a window onto the G-North tier and the day room. (Complaint, "Attachment Re: Part D: Claims," ¶¶ 3, 5.)

Custody Specialist Ian Burns ("Defendant Burns") was responsible for operating the day room door to the G-North tier from the control booth where he was stationed. Shortly before 9:00 a.m., Defendant Burns announced to Plaintiff and Martinez that the canteen was coming through, and that the tiers would be locked down. This meant that Plaintiff and Martinez were to return to their respective cells. Plaintiff acknowledged the order, but before he could comply, Defendant Burns opened the door between the day room and the G-North tier. Martinez immediately charged at Plaintiff, lunging at his neck with a shiv. Plaintiff deflected the attack, and fought with Martinez for several minutes. Martinez stabbed Plaintiff several times. Plaintiff tried unsuccessfully to disarm him. Eventually, several deputies arrived and pepper sprayed Plaintiff and Martinez, causing Martinez to run off. Martinez threw the shiv into the day room toilet where it was eventually recovered. (Complaint, "Attachment Re: Part D: Claims," ¶ 6.)

Following the attack, Plaintiff received treatment at Arrowhead Regional Medical Center, where three stab wounds were identified, one each below the left nipple, in the abdomen, and on the upper right side of the back. (Complaint, "Attachment Re: Part D: Claims," ¶ 7.)

From Defendant Burns' vantage point in the control booth, he could plainly see both Plaintiff and Martinez on either side of the door between the day room and the G-North tier. There was no reason to open the door before Plaintiff and Martinez returned to their respective cells. Access to Plaintiff's cell on the G-North tier did not require going through the door to the day room. Likewise, Martinez's cell on the G-South tier was accessible through another open door on the other side of the day room. (Complaint, "Attachment Re: Part D: Claims," ¶ 8.)

Based on the foregoing, Plaintiff states that Defendant Burns "either knew that Martinez intended to attack [him] and opened the door to facilitate the attack, or at a minimum acted with deliberate indifference to the possibility of such an attack[.]" Moreover, Plaintiff further states that "[t]he administration at CDC, including the supervisory staff on duty on the morning of April 3, 2012 and the Sheriff-Coroner at the time, Rod Hoops, failed to implement reasonable measures to assure the safety of inmates in a high security classification." Plaintiff alleges that the failure to ensure the safety of high security classification inmates "reflects a policy" of the CDC, and "demonstrates deliberate indifference to the safety of inmates, such as [Plaintiff], who are in a high security classification." (Complaint, "Attachment Re: Part D: Claims," ¶ 9-10.)

Plaintiff seeks $100,000 in compensatory damages. (Complaint at 6.)

## DISCUSSION

Having reviewed the Complaint pursuant to the standards set forth above, the Court has determined that Plaintiff has adequately stated a claim based on the failure to protect him from assault, but that Plaintiff's Monell claim does not withstand screening for the reasons discussed below:

**I.     Plaintiff Has Adequately Stated a Claim Based on the Failure to Protect Him From Assault**

Plaintiff claims that Defendants violated his constitutional rights by failing to protect him from assault by another inmate.  (Complaint, "Attachment Re: Part D: Claims," ¶¶ 1-10.)

Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence.[1]  Farmer v. Brennan, 511 U.S. 825, 832–33 (1994).  To state a claim for threats to safety or failure to protect, an inmate must allege facts to show that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Farmer, 511 U.S. at 834.  To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  Farmer, 511 U.S. at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference."  Farmer, 511 U.S. at 837.

Plaintiff claims that his right to protection from assault by other inmates was violated when, on April 3, 2012, Defendant Burns opened the day room door separating Plaintiff from Martinez, respectively located on CDC's G-North and G-South tiers, thus allowing Martinez to attack Plaintiff.  (Complaint, "Attachment Re: Part D: Claims," ¶¶ 5-9.)  Plaintiff further claims that, "at a minimum [Defendant Burns] acted with deliberate indifference to the possibility of such an attack," given that Defendant Burns knew that inmates on the G-North and G-South tiers are kept in isolation to protect the inmates and others from the very sort of attack Martinez inflicted on Plaintiff.  (Id., ¶ 9.)  Plaintiff explains that Defendant Burns "could plainly see" that Plaintiff and Martinez were on either side of the door and had not yet

---

[1] Plaintiff indicates that he was a pretrial detainee at the time of the alleged events.  Claims by pretrial detainees arise under the Fourteenth Amendment Due Process Clause, whereas claims by prisoners arise under the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).  Nevertheless, "[b]ecause pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," the Court analyzes Plaintiff's claim of failure to protect under the standards provided by the Eighth Amendment, despite Plaintiff's status as a pretrial detainee.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir.1991)).

returned to their cells when Defendant Burns opened the door. (Id., ¶ 8.) According to Plaintiff, there was no reason to open the door before Plaintiff and Martinez returned to their cells, given that neither of them had to go through the door to access their cells. (Id., ¶ 8.)

Liberally construed, Plaintiff's allegations are sufficient to show that Defendant Burns knew of, but disregarded, an excessive risk to Plaintiff's safety when he opened the day room door while Plaintiff and Martinez were out of their cells. Farmer, 511 U.S. at 837. Plaintiff's allegations against Defendant Burns in his individual capacity are sufficient to withstand screening.

## II. Plaintiff Must Amend His Monell Claim Against Defendants

Plaintiff names each Defendant in his official capacity.[2] The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 159. Therefore, Plaintiff's official-capacity claims against the San Bernardino County Sheriff-Coroner and Defendant Burns, a CDC employee, are equivalent to claims against the County itself. See Brewster v. Shasta County, 275 F.3d 803, 806–07 (9th Cir. 2001) (County Sheriff represents county, not state, in administering county jail).

A local government entity such as the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 694 (1978). The County can be held liable for the alleged actions of its officers unless "the action that is alleged to be unconstitutional implements or executes a

---

[2] Plaintiff also names Defendant Burns in his individual capacity.

7

policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690-91; see also Redman v. County of San Diego, 942 F.2d 1435, 1443-44 (9th Cir. 1991).

Plaintiff alleges that "[t]he administration at CDC, including the supervisory staff on duty on the morning of April 3, 2012 and the Sheriff-Coroner at that time, Rod Hoops, failed to implement reasonable measures to assure the safety of inmates in a high security classification." (Complaint, "Attachment Re: Part D: Claims," ¶ 10.) Moreover, Plaintiff states that "[he] believes that this failure reflects a policy not to do so." (Id.) According to Plaintiff, "[a]t a minimum, such a failure demonstrates deliberate indifference to the safety of inmates, such as [him], who are in a high security classification." (Id.) Finally, Plaintiff claims that "[he] understand[s] that inmates in a protective security classification have been attacked at CDC on numerous other occasions in recent years." (Id.)

Plaintiff's allegations concerning the CDC policies and/or customs of failing to implement reasonable safety measures are merely bald conclusory statements of elements of Plaintiff's § 1983 legal claim without any non-conclusory facts to support them and plainly insufficient to satisfy Iqbal. For example, Plaintiff includes no specific facts identifying specific CDC policies, regulations, officially adopted or promulgated decisions, customs, or practices by which any agent of the CDC allegedly inflicted the injuries about which Plaintiff is complaining, and how they led to the constitutional violation at issue. If Plaintiff chooses to file an amended complaint, he should identify clearly the policies, customs, or practices at the CDC relating to inmate safety, and show a specific and direct connection between these alleged policies and/or customs and the deprivation of Plaintiff's constitutional rights. The allegations are insufficient as presently stated.

\* \* \* \* \* \* \* \* \*

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above. Plaintiff must name separately each individual defendant against whom he brings his claims, identify clearly the factual basis for each of his claims and the particular constitutional violation, and articulate the connection between each named defendant and each claim.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court will recommend that this action be dismissed on the grounds set forth above for failure to prosecute and failure to comply with a Court order.**

DATED: May 31, 2013                    */s/ John E. McDermott*
                                        JOHN E. MCDERMOTT
                                        UNITED STATES MAGISTRATE JUDGE